1  Audra M. Mori, Bar No. 162850
   AMori@perkinscoie.com
2  Katherine M. Dugdale, Bar No. 168014
   KDugdale@perkinscoie.com
3  PERKINS COIE LLP
   1888 Century Park E., Suite 1700
4  Los Angeles, CA  90067-1721
   Telephone:  310.788.9900
5  Facsimile:  310.788.3399

6  Attorneys for Defendant
   NATIONAL ASSOCIATION OF FLIGHT
7  INSTRUCTORS, INC.

8

                    UNITED STATES DISTRICT COURT
9
                  CENTRAL DISTRICT OF CALIFORNIA
10

11
   G. ALEXANDER HILL, an individual;      Case No. 09cv06851 CAS-JC
12 JO ANN K. HILL, an individual; and
   RICHARD STOWELL, an individual,        DEFENDANT NATIONAL
13                                        ASSOCIATION OF FLIGHT
                    Plaintiffs,           INSTRUCTORS, INC.'S OPPOSITION
14                                        TO MOTION FOR PRELIMINARY
        v.                                INJUNCTION
15
   NATIONAL ASSOCIATION OF                Date:   November 23, 2009
16 FLIGHT INSTRUCTORS, INC., a            Time:   10:00 a.m.
   Kentucky corporation; and DOES 1       Place:  Courtroom 5- Second Floor
17 through 10, inclusive,                         Spring Street Courthouse
                                                  Hon. Christina A. Snyder
18                  Defendant.

19                                        Discovery cut-off:  None set
                                          Trial Date:         None set
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................. 3

III.   PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
       SHOULD BE DENIED .................................................................................. 9

       A.    Plaintiffs Cannot Demonstrate Irreparable Harm ............................... 9

       B.    Plaintiffs Have Not Shown The Clear Likelihood Of Success On
             The  Merits ........................................................................................ 13

             1.    No prima facie evidence of validity ......................................... 13

             2.    The Hills were directors on the NAFI board when the
                   Program  was developed and cannot claim ownership of
                   the NAFI Master  Instructor Program ..................................... 16

             3.    If any of the Plaintiffs are found to be owners, they are
                   co- owners with NAFI ............................................................. 17

             4.    Stowell does not have a valid copyright registration or
                   application ............................................................................... 19

             5.    Plaintiffs' claims are barred by the doctrine of laches ............. 20

       C.    The Balance of Equities Tips in NAFI's Favor................................... 21

       D.    The Public Has No Interest In The Outcome ..................................... 21

       E.    Request For Expedited Discovery...................................................... 22

IV.    CONCLUSION ............................................................................................ 22

# TABLE OF AUTHORITIES

**Page**

**Cases**

Aalmuhammed v. Lee, 202 F.3d 1227 (9th Cir.2000) ................................................ 18

Allora, LLC v. Brownstone, Inc., 2007 WL 1246448, at *5 (W.D.N.C. Apr.27, 2007) .............. 10

American Trucking Ass'ns Inc. v. City of Los. Angeles, 559 F.3d 1046 (9th Cir.2009) ............... 9

Armstrong v. Virgin Records, Ltd., 91 F. Supp. 2d 628 (S.D.N.Y. 2000) .................................. 20

Brush Creek Media v. Boujaklian, 2002 WL 1906620 (N.D. Cal. Aug. 19, 2002) ...................... 19

Cal. Pharmacists Ass'n v. Maxwell-Jolly, 563 F.3d 847 (9th Cir.2009) ...................................... 11

Continental Airlines v. Intra Brokers, Inc., 24 F.3d 1099 (9th Cir.1994) .................................... 21

Couveau v. American Airlines, Inc., 218 F.3d 1078 (9th Cir. 2000) .......................................... 20

Danjaq LLC v. Sony Corporation, 263 F.3d 942 (9th Cir. 2001) ............................................... 20

Demetriades v. Kaufmann, 680 F.Supp. 658, 661 (S.D.N.Y. 1988) ........................................... 19

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641
    (2006) ................................................................................................................... 10

Gidatex, S.R.L. v. Campaniello Imports, Ltd., 13 F.Supp.2d 417 (S.D.N.Y.1998) ...................... 13

Goebel v. Manis, 39 F.Supp.2d 1318 (D. Kan. 1999) ............................................................ 19

Jacobsen v. Katzer, 609 F.Supp.2d 925 (N.D. Cal. 2009) ...................................................... 10

Lanard Toys Limited v. Novelty, Inc., 2007 WL 2439505, *6-7 (C.D. Cal 2005) ...................... 14

Loree Rodkin Management Corp. v. Ross-Simons Inc., 315 F.Supp.2d 1053
    (C.D. Cal. 2004) ...................................................................................................... 19

Mayflower Hotel Stockholders Protective Comm. v. Mayflower Hotel Corp.,
    173 F.2d 416 (D.C.Cir.1949) ...................................................................................... 16

Mazurek v. Armstrong, 520 U.S. 968 S.Ct. 1865, 138 L.Ed.2d 162 (1997) ............................... 9

Metro-Goldwyn-Mayer Studios, Inc. v. Grockster, Ltd., 518 F.Supp.2d 1197, 1208
    (C.D. Cal. 2007) .................................................................................................. 10, 11

Nietech Corp. v. CBS Data Services, Inc., 2004 WL 5203205, at *3-7
    (N.D. Cal. Mar. 1, 2004) ...................................................................................... 17, 18

Oakland Tribune, Inc. v. The Chronicle Publishing Company, Inc., 762 F.2d 1374
    (9th Cir. 1985) ........................................................................................................ 12

Oddo v. Ries, 743 F.2d 630 (9th Cir.1984) ......................................................................... 17

# TABLE OF AUTHORITIES

**Page**

Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc., 832 F.Supp. 1378
(C.D. Cal. 1993).................................................................................................12

Patmon v. Hobbs, 280 S.W.3d 589, 595-598 (Ky.App. Mar 27, 2009)........................................16

Richard Feiner & Co. v. Turner Entertainment Co., 98 F.3d 33 (2d Cir.1996) ............................13

Robinson v. R&R Publishing Inc., 943 F. Supp. 18 (D.D.C. 1996)........................................ 16, 17

Ryan v. CARL 1998 WL 320817 (N.D. Cal. June 15, 1998) ......................................................19

Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)..............................11

Semitool, Inc. v. Tokyo Electron Am., 208 F.R.D. 273 (N.D.Cal.2002).....................................22

Sun Optics, Inc. v. FGX Int'l, Inc., 2007 WL 2228569, at *1 (D.Del. Aug.2, 2007)...................10

Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd., 491 F.Supp.2d 871 (D.Minn.2007) ....................10

Winter v. Natural Resources Defense Council, --- U.S. ----, ----, 129 S.Ct. 365, 376, 172
L.Ed.2d 249 (2008) ....................................................................................................9, 21

**Statutes**

17 U.S.C. § 410.............................................................................................................14

17 U.S.C. § 411.............................................................................................................19

**Regulations and Rules**

Federal Rules of Civil Procedure 26 ....................................................................................22

## I.    INTRODUCTION

Plaintiffs G. Alexander ("Sandy") and JoAnn K. Hill (collectively the "Hills") and Richard Stowell ("Stowell") (collectively "Plaintiffs") are seeking to enjoin the National Association of Flight Instructors, Inc. ("NAFI") from offering its NAFI Master Flight Instructor Program ("NAFI Master Instructor Program" or "Program"), which is an accreditation program that NAFI has owned and provided to its members since 1997. The NAFI Master Instructor Program is relatively small in scale, with 273 current NAFI Master Instructors. However, the Program is very important to NAFI. The motive behind Plaintiffs' action is financial. They wish to enjoin NAFI from offering the NAFI Master Instructor Program so that flight instructors seeking accreditation will go to the Hills' fledgling flight instructor accreditation program, which was started in 2009, after the Hills were not re-elected to the board of directors of NAFI. Tellingly, only after the Hills were not re-elected to NAFI's board, and after they started their own competing organization, did Plaintiffs claim to own the NAFI Master Instructor Program. Plaintiffs do not own or have any right to the NAFI Master Instructor Program and cannot meet the requirements necessary to enjoin NAFI from offering its long-standing Program. Simply put, the NAFI Master Instructor Program belongs to NAFI.

Plaintiffs are requesting extraordinary relief despite the fact that they waited almost a year since the first alleged infringement and twelve years after the first publication of the materials at issue. On February 2 and 3, 2009, Plaintiffs first notified NAFI of their claim to the NAFI Master Instructor Program; however, they did not file a complaint against NAFI until September 2009 and did not file their motion for preliminary injunction until October 14, 2009.

Even if Plaintiffs could overcome the nine-month delay in seeking injunctive relief, they cannot show that they would be irreparably harmed if NAFI continues offering the NAFI Master Instructor Program. Irreparable harm exists only where monetary damages provide inadequate relief, and Plaintiffs have plainly quantified

1   the economic loss they claim they will suffer in their moving papers.  If anyone has

2   the potential of suffering irreparable harm, it is NAFI, whose signature

3   accreditation Program is being called into question.

4       Plaintiffs cannot establish the clear likelihood of success on the merits.

5   Assuming the Hills have a copyright registration, the Hills' copyright registration

6   would not be presumptively valid because the Hills waited over 12 years after the

7   first publication of the Program to attempt to register a copyright.  Accordingly, the

8   Hills have the burden of proving ownership, which they cannot meet.[1]

9       Although the Hills were involved in the original drafting of the Program with

10  NAFI, they do not own or have any right to the NAFI Master Instructor Program.

11  The Hills were members of the board of directors of NAFI at all times during their

12  participation in the drafting of the NAFI Master Instructor Program and worked on

13  the Program in a fiduciary capacity.  They worked directly with the Executive

14  Director of NAFI to develop the Program.  The NAFI Master Instructor Program

15  was a compilation of thoughts and ideas from many sources.  NAFI had the

16  ultimate say in what went into the Program and NAFI owned the Program.

17      Plaintiffs are well aware that they do not own the NAFI Master Instruction

18  Program.  Stowell, who is attempting to claim ownership of the aerobatics portion

19  of the NAFI Master Instructor Program, telephoned the actual creator of the

20  aerobatics portion of the Program prior to filing suit and asked if he would object if

21  Stowell took credit for the creation of the aerobatic instructor part of the Program.

22      Plaintiffs should also be precluded from preliminary injunctive relief due to

23  the inexcusable 12 year delay in applying for a copyright registration.  NAFI has

24  invested financially in the NAFI Master Instructor Program over its 12 year history.

25  NAFI spent money advertising, marketing and administering the Program.  NAFI

26  does not maintain complete records of e-mails and documents dating back to 1997.

27

28  [1]  At the time of filing this Opposition, Stowell has not applied for a copyright
    registration and is not referenced in the registration applied for by the Hills.

1    Some employees of NAFI during the 12 year time period are gone and those that

2    remain have memories of the events that have faded over time.  Due to Plaintiffs' 12

3    year delay, NAFI would suffer both economic and evidentiary prejudice if it were

4    enjoined.

5        Plaintiffs have not met the burden necessary to deny NAFI the opportunity to

6    conduct discovery in this case and defend its ownership of the NAFI Master

7    Instructor Program.  Plaintiffs do not meet the required standard for obtaining a

8    preliminary injunction and their motion should be denied.

9

10   **II.    STATEMENT OF FACTS**

11       Founded more than 40 years ago, NAFI is a non-profit professional

12   organization for flight instructors, which serves as the voice of aviation education.

13   NAFI recognizes flight instructors as the front line for quality control in the

14   aviation world and has been committed to the education of flight instructors since

15   its inception.  NAFI's Code of Ethics requires its members to "continually improve

16   our own teaching and flying skills through education and operational experiences."

17       In the mid-1990s, NAFI was interested in developing a program that would

18   be recognized by the Federal Aviation Administration ("FAA") and used by NAFI

19   members to renew flight instructor certificates.  Declaration of Sean Elliott ("Elliot

20   Decl."), ¶ 3.  Work began on the NAFI Master Certificated Flight Instructor ("CFI")

21   Program, which would later be known as the NAFI Master Instructor Program

22   (collectively, "NAFI Master Instructor Program").  Id.  The NAFI Master Instructor

23   Program is an accreditation program that promotes continuing education of flight

24   instructors and set standards to which flight instructors can aspire.  Id.  The NAFI

25   Master Instructor Program and related materials were created by and for NAFI and

26   have been at all times owned, advertised, marketed and distributed by NAFI.

27       Sean Elliott ("Elliott"), the current President of NAFI and the Executive

28   Director of NAFI from 1996 to 2001, was instrumental in the creation and

1   development of the NAFI Master Instructor Program and the documents that were

2   used in conjunction with the Program.  Elliott Decl., ¶ 4.  As Executive Director, he

3   had to make sure that the NAFI Master Instructor Program and related materials

4   would be acceptable to the NAFI board of directors and NAFI members.  NAFI had

5   final say as to what was included in the NAFI Master Instructor Program and

6   related materials.  Id.

7        In their roles as NAFI's Co-Directors of Education, board members, and

8   members of NAFI's Professional Standards Committee, the Hills also worked on

9   the NAFI Master Instructor Program.  Elliott Decl., ¶ 5.  Elliott spoke with the Hills

10  on the telephone regularly about what would become the NAFI Master Instructor

11  Program.  They spoke specifically about the NAFI Master Instructor application

12  forms and what should be added or deleted.  The forms served as an outline for the

13  discussion of the program.  Id. at ¶ 6.  For example, one of the items that Elliott

14  specifically recalled adding was that an applicant could receive credit toward the

15  NAFI Master Instructor designation for "construction of a home-built aircraft."  As

16  a model aviation enthusiast, he felt that home-built aircraft construction deserved

17  consideration as one of the elements in obtaining accreditation.  Id. at ¶ 7.  The

18  Hills did not share his strong interest in building models or constructing home-built

19  aircraft and would not have added references to home built aircraft on their own.

20       Other people at NAFI were also involved in the creation of the NAFI Master

21  Instructor Program and related documentation.  Elliott Decl., ¶ 8.  In or around June

22  of 1996, Elliott had lunch with NAFI member, J.C. Boylls ("Boylls"), in Oshkosh,

23  Wisconsin.  They talked about the possible creation of a NAFI flight instructor

24  recognition program.  Boylls was interested in contributing to the creation of the

25  program.  Independent of the Hills, Boylls investigated how a guild of organists

26  promoted the professional standing of its members.  With this background, in 1997,

27  Boylls provided Elliott with an outline containing possible criteria for a NAFI

28  certification program.  A copy of the outline is attached to the Elliott Decl. as

1    Exhibit 1.  Elliott worked with the Hills to implement some of Boylls' outline into

2    the NAFI Master Instructor Program materials.  Id.

3        Elliott also worked closely with people who work at the Experimental

4    Aircraft Association ("EAA") on the NAFI Master Instructor Program materials.

5    Elliott Decl., ¶ 9.  He worked with Olivia Phillips Trabbold ("Trabbold"), a graphic

6    designer who works at EAA and provides services to NAFI through its affiliation

7    with EAA, to produce the NAFI Master Instructor logo.  Elliott and Trabbold also

8    produced the certificate that was provided to those who received the NAFI Master

9    Instructor designation.  When individuals join NAFI, they receive a certificate of

10   membership, and that certificate was used by Elliott and Trabbold as the basis for

11   designing the NAFI Master Instructor Certificate.  Id.  In addition, Rene Myers,

12   who was at the time of the creation of the program an executive assistant to Robert

13   Warner, then an Executive Vice President at EAA, proofread and edited the NAFI

14   Master Instructor forms as they were being developed.  Id. at ¶ 10.

15       Elliott worked on the development of the correspondence sent to NAFI

16   Master Instructors, including letters congratulating them for being designated a

17   NAFI Master Instructor, letters questioning their applications, and letters reminding

18   them when it was time to renew.  Elliott Decl., ¶ 11 and Exhibit 2 to Elliott Decl.

19   He promoted the NAFI Master Instructor Program extensively and was quoted in

20   many press releases and articles written about the Program.  For example, on

21   August 12, 1997, NAFI issued a press release entitled, "NAFI INTRODUCES

22   MASTER CFI PROGRAM."  Mr. Elliott was quoted in the press release as saying,

23   "The Master CFI program is NAFI's greatest contribution yet."  It stated that more

24   information could be acquired by calling NAFI headquarters or visiting NAFI's

25   website.  Id. and Exhibit 3 to Elliott Decl.

26       Throughout its development, the NAFI Master Instructor Program was

27   continually discussed at NAFI board meetings, at which NAFI directors provided

28   input.  Elliott Decl., ¶ 12.  The board meetings were attended by the Hills and by

1   the other members of the NAFI board of directors.  The NAFI board had 13

2   members at the time the Program was being developed.  The Hills participated in

3   discussions at the NAFI board meetings regarding what NAFI should do to protect

4   its proprietary interest in the Program against other companies who may offer

5   accreditation programs.  At no time during these discussions did the Hills claim any

6   ownership interest in the Program.  Id.

7        The Hills and other NAFI directors and officers worked diligently on the

8   NAFI Master Instructor Program because they wanted to benefit NAFI members

9   and the organization as a whole.  Elliott Decl., ¶ 13.  Crucial to the creation of the

10  program was the fact that NAFI provided the credential, which is why the Program

11  was entitled the "NAFI Master Instructor Program" and why the NAFI name and

12  NAFI logos appear throughout the Program materials.  The flight instructors who

13  have been designated as a NAFI Master Instructor enjoy many benefits provided by

14  NAFI, including publicity in NAFI periodicals and on the NAFI website.  NAFI has

15  also invited them to special events developed and/or instituted for NAFI Master

16  Instructors.  Id.

17       As NAFI directors, the Hills utilized NAFI's resources when working on the

18  NAFI Master Instructor Program.  They used NAFI letterhead and facsimile cover

19  sheets.  NAFI printed the packages sent to applicants for the NAFI Master

20  Instructor Program and all applications were submitted to NAFI at the NAFI office

21  in Oshkosh, Wisconsin.  Elliott Decl., ¶¶ 14-15.

22       In 1998, Elliott discussed with the Hills certain changes to the NAFI Master

23  Instructor Program forms.  The forms were modified to include a section seeking

24  applicants' biographical information, which NAFI could use to publicize NAFI

25  Master Instructors.  Elliott Dec., ¶ 16.

26       The NAFI Master Instructor information and forms were posted on NAFI's

27  website.  Individuals who were paid by NAFI and/or EAA posted the NAFI Master

28

Instructor information on NAFI's website.  The Hills had no access to the NAFI website.  Elliott Decl., ¶ 17.

After the NAFI Master Instructor Program had been developed and the forms created, the Hills, who had previously volunteered to administer the Program, sought compensation for the processing of the applications.  On October 30, 2000, the Hills, operating as Two Hills Aviation, and NAFI executed an Independent Contractor Agreement.  Elliott Decl., ¶ 18.  Under the agreement, the Hills would be paid to review each NAFI Master Instructor application.  The agreement also provided, "In performing services as officers, directors, committee members and/or executives of NAFI, Consultants shall do so for no additional compensation."  In addition, the Agreement provided that for two years after its termination, the Hills would not render any services similar to those provided to NAFI or engage in any activity that competed with NAFI.  Id. at ¶ 18.

In the summer of 2000, Dave Lammers ("Lammers"), who was at the time Vice President of the International Aerobatic Club ("IAC"), and Elliott discussed the possibility of expanding the NAFI Master Instructor Program to include a Master Aerobatic designation to be awarded to qualifying aerobatic flight instructors.  Elliott Decl., ¶ 19 and Declaration of David Lammers ("Lammers Decl."), ¶ 3.  Lammers created a PowerPoint presentation which contained many criteria that were incorporated into the application form developed for the aerobatic designation.  Elliott Decl., ¶ 20 and Lammers Decl., ¶ 5 and Exhibit 1 to Lammers Decl.  While the aerobatic designation portion of the NAFI Master Instructor Program existed, Stowell helped to review and administer the applications.  Elliott Decl., ¶ 21.

In 2002, NAFI requested that the NAFI Master Instructor designation be made available to FAA certified flight instructors as an additional means by which to renew an unexpired flight instructor certificate.  Elliott Decl., ¶ 23.  By letter dated March 6, 2002, Elliott was informed by the FAA that it approved the

1  NAFI Master Instructor continuing education program as an acceptable alternate

2  means of flight instructor certification renewal.  As part of the process for FAA

3  accreditation, Elliott also served as an Airman Certificate Representative.  By letter

4  dated February 4, 2004, the FAA informed Elliott that it renewed NAFI's Master

5  Instructor Program as a continuing education program for two years.  Id.

6      The Hills were not re-elected to the NAFI board in January 2009.  Elliott

7  Decl., ¶ 24.  While the Hills were on the NAFI board, there was never any

8  discussion of a non exclusive, royalty-free license for the NAFI Master Instructor

9  Program, the NAFI Master Instructor Aerobatic designation, or related materials.

10  Neither the Hills, nor Stowell ever claimed any ownership interest in the NAFI

11  Master Instructor Program, the NAFI Master Instructor Aerobatic designation, or

12  the related materials and forms.  Elliott Decl., ¶ 24 and Declaration of Jason Blair

13  ("Blair Decl."), ¶5.  Nor would they have made such a claim as the NAFI Master

14  Instructor Program, the NAFI Master Instructor Aerobatic designation, and related

15  materials and forms had been created by and for NAFI and are owned by NAFI.

16  Elliott Decl., ¶ 24.

17      Stowell contacted Lammers on August 11, 2009 and asked if Lammers

18  would object if Stowell took credit for the creation of the aerobatic instructor part

19  of the Program.  Lammers told Stowell that Stowell did not create the program and

20  he should not misrepresent the facts.  Lammers Decl., ¶ 7.

21      NAFI has invested time, money and effort in the development,

22  advertisement, marketing and administration of the NAFI Master Instructor

23  Program for years.  Blair Decl., ¶ 8.  The NAFI Master Instructor Program belongs

24  to NAFI.

25

26

27

28

III.    **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**
**SHOULD BE DENIED.**

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Resources Defense Council, --- U.S. ----, ----, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008).  A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, (3) and that an injunction is in the public interest.  Winter, 129 S.Ct. 365, 374.

A.    Plaintiffs Cannot Demonstrate Irreparable Harm

A plaintiff is not granted the presumption of irreparable harm upon a showing of likelihood of success on the merits.  In Winter, the Supreme Court found that the Ninth Circuit's standard of the likelihood of irreparable injury was too lenient and held that a plaintiff must demonstrate that irreparable injury is *"likely* in the absence of an injunction."  Id. at 375.  "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Id. at 375-376 (citing Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (*per curiam* )).  The Ninth Circuit has since clarified its standard under Winter.  See, American Trucking Ass'ns Inc. v. City of Los. Angeles, 559 F.3d 1046, 1052 (9th Cir.2009) (holding that "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable").

The Ninth Circuit has not specifically addressed the issue of whether irreparable harm is presumed in copyright cases in light of the rulings in Winter and

1  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d

2  641 (2006) (stating in a patent infringement case that the Court "has consistently

3  rejected invitations to replace traditional equitable considerations with a rule that an

4  injunction automatically follows a determination that a copyright has been

5  infringed.").  Other district courts in California have found there is no longer a

6  presumption of irreparable harm.  Jacobsen v. Katzer, 609 F.Supp.2d 925, 936

7  (N.D. Cal. 2009) (finding a plaintiff in a copyright action seeking a preliminary

8  injunction is not granted the presumption of irreparable harm upon a showing of

9  likelihood of success on the merits).  Even before Winter, a number of courts were

10  finding, based on the language in eBay, that irreparable harm is no longer presumed

11  for copyright infringement at the preliminary injunction stage.  See, e.g., Metro-

12  Goldwyn-Mayer Studios, Inc. v. Grockster, Ltd., 518 F.Supp.2d 1197, 1208-1214

13  (C.D. Cal. 2007) (Sun Optics, Inc. v. FGX Int'l, Inc., 2007 WL 2228569, at *1

14  (D.Del. Aug.2, 2007) ("Even if the moving party succeeds in demonstrating a

15  likelihood of success on the merits, the notion that there follows a presumption of

16  irreparable harm seems inconsistent with the Supreme Court's holding in [eBay ].");

17  Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd., 491 F.Supp.2d 871, 881

18  (D.Minn.2007) ("[T]he Court finds that it may not presume that a patentee who is

19  likely to succeed on the merits at trial will suffer irreparable harm in the absence of

20  a preliminary injunction."); Allora, LLC v. Brownstone, Inc., 2007 WL 1246448, at

21  *5 (W.D.N.C. Apr.27, 2007) ("Until this issue is clarified by the Fourth Circuit or

22  the Supreme Court, this Court will not presume irreparable harm and likelihood of

23  success on the merits following a prima facie showing of copyright infringement,

24  but will instead treat copyright cases in the same manner as any other civil action

25  requesting a preliminary injunction.") ")[2]  Accordingly, Plaintiffs must establish the

26  likelihood of irreparable injury in order to obtain extraordinary injunctive relief.

27

28  [2] The Grockster court ultimately determined that the enormity of the damages for
the infringement at stake and the vast nature of the infringement were sufficient to

1    In this case, Plaintiffs cannot demonstrate irreparable harm.  Harm is

2    irreparable when it cannot be remedied except through injunctive relief.   Grokster,

3    518 F.Supp.2d at 1210.  Plaintiffs have made no showing that an adequate remedy

4    at law does not exist.  Plaintiffs claim that the reputation, quality and integrity of

5    the Program is at stake, but this cannot be the case, since NAFI has offered the

6    NAFI Master Instruction Program since 1997, and Plaintiffs by their very motion

7    contend that NAFI is using essentially the same program that Plaintiffs claim to

8    own.  The Program is and was at all times NAFI's.  In fact, it is Plaintiffs who are

9    damaging the goodwill of NAFI by starting a competing business and claiming to

10   own the rights to NAFI's Master Instruction Program.

11   Plaintiffs argue specifically that it is the economic value of the Program that

12   is being damaged.  However, economic damages are not considered irreparable

13   because the injury can later be remedied by a damage award.  Cal. Pharmacists

14   Ass'n v. Maxwell-Jolly, 563 F.3d 847, 852 (9th Cir.2009) (quoting Sampson v.

15   Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)) (holding that "the

16   temporary loss of income, ultimately to be recovered, does not usually constitute

17   irreparable injury.... The possibility that adequate compensatory or other corrective

18   relief will be available at a later date, in the ordinary course of litigation, weighs

19   heavily against a claim of irreparable harm").

20   If infringement is found here, there is an adequate remedy at law.  Although

21   NAFI disputes that Plaintiffs own the NAFI Master Instructor Program and are

22   entitled to any damages, Mr. Hill's declaration sets forth the precise amount of

23   damages he claims are at issue.  Mr. Hill states that while working on behalf of

24   NAFI, the Hills administered an average of 11.2 applications per month from 2005

25   to 2008, which generated a monthly income from NAFI to the Hills of $1,162.  He

26   goes on to state that now the number of applications has dropped to an average of

27

28   establish the irreparable harm necessary for the issuance of a permanent injunction.
Grockster, 518 F.Supp.2d at 1217-1219.

3.9 per month from February to September 2009 with a monthly income of $441. Declaration of G. Alexander Hill ("Hill Decl."), ¶ 27. According to his own declaration, the amount of damages can easily be quantified. Although Mr. Hill states that there is no way to know how many applications would have been submitted but for the "harm," the Program was in place for 12 years and Plaintiffs have quantified their alleged damages to date quite effortlessly.[3]

There are currently 237 NAFI Master Instructors. Blair Decl., ¶ 7. Because a NAFI Master Instructor must renew his or her designation once every two years, NAFI estimates that there were approximately 140 to 160 renewals and/or new NAFI Master Instructors per year at the Program's high point. Since January 1, 2009, NAFI has only had 13 new Master Instructors and 20 renewals. Id. Given the relative ease of quantifying actual damages, there is no irreparable harm.

Another factor working against Plaintiffs' claim of irreparable injury is their delay in requesting the instant relief. Delay alone is sufficient to undermine a plaintiff's claim of immediate, irreparable harm. Oakland Tribune, Inc. v. The Chronicle Publishing Company, Inc., 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"); Gidatex, S.R.L. v. Campaniello Imports, Ltd., 13

---

[3] Actual damages are the only damages available to Plaintiffs under the Copyright Act in this action. Under Section 412, "no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for ….(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." (Emphasis added). In other words, if a work is published and then infringement of the work commences *before* the work is registered, then recovery of statutory damages and fees may be barred by Section 412 unless registration was made (application filed) within three months of publication. Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc., 832 F.Supp. 1378, 1393 (C.D. Cal. 1993) (denying the recovery of statutory damages and fees since the infringing conduct first occurred before registration of the product, and continued thereafter).

1  F.Supp.2d 417, 419 (S.D.N.Y.1998) ("courts typically decline to grant preliminary

2  injunctions in the face of unexplained delays of more than two months"); Richard

3  Feiner & Co. v. Turner Entertainment Co., 98 F.3d 33, 35 (2d Cir.1996) (holding

4  that plaintiff's inaction after awareness of copyright infringement undermined the

5  claim that "any further delay will cause irreversible harm.").

6      The Hills were advised in the fall of 2008 that they were not going to be re-

7  elected to the NAFI board of directors, yet almost a year passed before they filed

8  their motion for injunctive relief.  On that basis alone, their motion for preliminary

9  injunction should be denied.

10      Plaintiffs cannot meet the burden of showing irreparable harm.  Their have

11  not justified why NAFI should be denied the right to defend its Program through

12  discovery and trial before an injunction is considered.  Plaintiffs are not entitled to

13  extraordinary injunctive relief solely because discovery and a trial on the merits is

14  expensive.

15

16      B.    Plaintiffs Have Not Shown The Clear Likelihood Of Success On The

17            Merits.

18      Assuming Plaintiffs could show irreparable harm, they cannot show a clear

19  likelihood of success on the merits.

20            1.    No prima facie evidence of validity

21      The Hills did not apply for a copyright registration until May 2009, 12 years

22  after the first publication of the NAFI Master Instructor Program.  Accordingly, the

23  Hills are not entitled to a presumption of validity.

24            In any judicial proceedings the certificate of a registration
25            made before or within five years after first publication of
26            the work shall constitute prima facie evidence of the
            validity of the copyright and of the facts stated in the
27            certificate.  The evidentiary weight to be accorded the
28            certificate of a registration made thereafter shall be

1    within the discretion of the court.

2    Lanard Toys Limited v. Novelty, Inc., 2007 WL 2439505, *6-7 (C.D. Cal. 2005),

3    quoting, 17 U.S.C. § 410(c) (finding that the plaintiff did not satisfy its burden of

4    establishing likelihood of success on the merits for copyright infringement for items

5    not entitled to the presumption provided by 17 U.S.C. 410(c)).

6         The NAFI Master Instructor Program was first published in 1997.  The Hills

7    did not obtain a copyright registration until May 2009, 12 years after the first

8    publication, and as noted earlier, only after a falling out with NAFI.  Plaintiffs'

9    motion argues that they are the sole owners of the NAFI Master Instructor Program;

10   however, Plaintiffs support their argument with nothing more than self-serving

11   statements that they authored the Program.  Such evidence is not sufficient to

12   establish the clear likelihood of success on the merits.  In reality, the Program has

13   always been NAFI's.

14        NAFI's Executive Director assisted in the creation and development of the

15   NAFI Master Instructor Program and the documents that were used in conjunction

16   with the Program.  NAFI had final say as to what was included in the NAFI Master

17   Instructor Program and related materials.  NAFI's Executive Director spoke with

18   the Hills on the telephone consistently and frequently about what would become the

19   NAFI Master Instructor Program.  They spoke specifically about the NAFI Master

20   Instructor application forms and what should be added or deleted.  Elliott Decl., ¶¶

21   4, 6, 7, and 16.

22        As NAFI directors, the Hills utilized NAFI's resources when working on the

23   NAFI Master Instructor Program.  They used NAFI letterhead and facsimile cover

24   sheets.  NAFI printed the packages sent to applicants for the NAFI Master

25   Instructor Program and all applications were submitted to NAFI, at its office in

26   Oshkosh, Wisconsin.  Elliott Decl., ¶¶14-15.

27

28

1    Other people were also involved in the creation of the NAFI Master

2 Instructor Program and related documentation.  For example, NAFI member J.C.

3 Boylls, provided NAFI with an outline of possible criteria for a certification

4 program, some of which was incorporated into the Program; Rene Myers, who was

5 at the time of the creation of the Program an executive assistant to Robert Warner,

6 then an Executive Vice President at EAA, proofread and edited the NAFI Master

7 Instructor forms as they were being developed; and Olivia Phillips Trabbold who

8 provides services to NAFI worked on producing the NAFI Master Instructor logo

9 and the NAFI Master Instructor Certificate.  Elliott Decl., ¶¶ 8-10.

10    The NAFI Master Instructor Program was continually discussed at NAFI

11 board meetings while it was being developed and NAFI directors provided input.

12 The board meetings were attended, not only by the Hills, but also the other 11

13 members of the NAFI board of directors.  The Hills and other NAFI directors and

14 officers worked diligently on the development of the NAFI Master Instructor

15 Program because they wanted to benefit NAFI members and the organization as a

16 whole.  Elliott Decl., ¶¶ 12-13.

17    On August 12, 1997, NAFI issued a press release entitled, "NAFI

18 INTRODUCES MASTER CFI PROGRAM."  Elliott was quoted in the press

19 release as saying, "The Master CFI program is NAFI's greatest contribution yet."

20 The press release also stated that more information could be acquired by calling

21 NAFI or visiting NAFI's website.  Elliott Decl., ¶ 11.

22    Any claim of ownership by Stowell should be disregarded.  The aerobatics

23 portion of the NAFI Master Instructor Program was created by Dave Lammers.

24 Stowell contacted Lammers to see if Lammers would object to his taking credit for

25 developing the aerobatics portion of the Program.  Lammers objected to Stowell

26 making such a misrepresentation.  Lammers Decl., ¶ 7.

27

28

1
2
3

       2.     <u>The Hills were directors on the NAFI board when the Program was developed and cannot claim ownership of the NAFI Master Instructor Program</u>

4       At all times during the creation of the NAFI Master Instructor Program, the

5 Hills were members of the NAFI board of directors.  As directors, they cannot

6 claim ownership of intellectual property created on behalf of NAFI.  "It is

7 fundamental that officers and directors of a corporation occupy a fiduciary

8 relationship to the corporation and its stockholders and must act in utmost good

9 faith in managing corporate affairs." <u>Robinson v. R&R Publishing Inc.</u>, 943 F.

10 Supp. 18, 21 (D.D.C. 1996), <u>citing</u>, <u>Mayflower Hotel Stockholders Protective</u>

11 <u>Comm. v. Mayflower Hotel Corp.</u>, 173 F.2d 416, 418 (D.C.Cir.1949).  "A corporate

12 fiduciary's duty of loyalty to the corporation undergirds the 'corporate opportunity

13 doctrine.' " <u>Id.</u>  The "corporate opportunity" doctrine is applicable in Kentucky,

14 where NAFI is incorporated. <u>See</u> <u>generally</u>, <u>Patmon v. Hobbs</u>, 280 S.W.3d 589,

15 595-598 (Ky.App. Mar 27, 2009) (adopting the doctrine of corporate opportunity,

16 under which one entrusted with active corporate management, such as officer or

17 director or manager-member, occupies fiduciary relationship and may not exploit

18 this position by appropriating a business opportunity properly belonging to the

19 corporation).

20       The <u>Robinson</u> case is very similar to the situation here and is instructive.

21 The plaintiff, Robinson, was a fiduciary, a director and vice president of the

22 corporation and she created the subject work, alone or in conjunction with others,

23 while she was a fiduciary. <u>Robinson</u>, 943 F. Supp. 18, 22.  The work was published

24 by the corporation with the corporation's name.  When the relationship between the

25 plaintiff and the corporation deteriorated, she sought exclusivity for the work under

26 the Copyright Act in her own name, for her personal benefit and directly adverse to

27 the interests of the corporation to which she owed a fiduciary duty.  <u>Id.</u>

28

1    The court rejected her argument that she was entitled to ownership as an

2    author under the Copyright Act.  <u>Id.</u>  The critical fact for the court was that "the

3    plaintiff, at all times, had reason to know that her work product was to be owned by

4    the corporation and not by any individual such as herself.  Moreover, it was not

5    until the plaintiff's relationship with Rees deteriorated that the issue of ownership

6    was even raised."  <u>Id.</u>  The court ultimately concluded that the plaintiff held the

7    copyright in trust for the corporation, regardless of who authored the work within

8    the meaning of the Copyright Act.  <u>Id.</u>

9        Similarly, the Hills at all times were working on the Master Instructor

10   Program on behalf of NAFI, while they were directors of NAFI.  Elliott Decl., ¶¶ 2

11   and 5.  They worked closely with NAFI to put the Program together and used NAFI

12   resources.  <u>Id.</u> at ¶¶ 4, 6-10, and 12-14.  NAFI released the NAFI Master Instructor

13   Program in 1997 and has used it continually since that time and always in

14   conjunction with the NAFI name.  The Hills participated in discussions at the NAFI

15   board meetings regarding what NAFI should do to protect its proprietary interest in

16   the Program against other companies who may offer accreditation programs.  At no

17   time during these discussions did the Hills claim any ownership interest in the

18   Program.  <u>Id.</u> at ¶ 12.  Much like the plaintiff in <u>Robinson</u>, the Hills never made any

19   claim to the Program until after their falling out with NAFI and until after they

20   started their own competing business.

21

22        3.    <u>If any of the Plaintiffs are found to be owners, they are co-
                owners with NAFI.</u>

23

24        If Plaintiffs were to have any ownership in the NAFI Master Instructor

25   Program, which NAFI disputes, it would be as co-owners with NAFI and thus,

26   NAFI cannot be liable for infringement.  <u>Nietech Corp. v. CBS Data Services, Inc.</u>,

27   2004 WL 5203205, at *3-7 (N.D. Cal. Mar. 1, 2004).  A co-owner cannot be sued

28   for infringing the copyright.  <u>Oddo v. Ries</u>, 743 F.2d 630, 632-33 (9th Cir.1984).

1    The Nietech case is instructive.  At issue was the ownership of complex

2  marketing brochures.  Defendant argued that it could not be liable for copyright

3  infringement because it was a joint owner by virtue of the parties' business

4  relationship and its contributions to the development of the brochures.  A

5  representative from defendant spent significant hours over a two year period to

6  develop the program and participated and directed the creation of marketing

7  materials and contributed ideas and recommendations and the materials at issue

8  were jointly marketed.  Id. at *4-5.

9    The Nietech court found that the plaintiff did not establish a likelihood of

10  success on a copyright infringement claim because there were numerous disputes

11  with regard to the ownership that required resolution before success on the merits

12  could be determined.  Id. at *3.  In distinguishing Aalmuhammed v. Lee, 202 F.3d

13  1227 (9th Cir. 2000),[4] the court found, "There is no clear, undisputed evidence that

14  a single 'creative genius' or 'mastermind' authored the materials.  Instead, the parties

15  provide conflicting evidence concerning matters such as . . .the contributors to the

16  development of the marketing materials . . . ., and the intent of the parties during the

17  period of development . . . "  Id. at *6-7.

18    The overwhelming evidence shows that NAFI is the owner of the NAFI

19  Master Instructor Program and, at the very least, a co-owner, and cannot be liable

20  for infringement.  As discussed in more detail above, NAFI  had the final say over

21  the Program.  Elliott Decl., ¶4.  The Program was at all times marketed and

22  distributed by NAFI and under NAFI's name.  Id. at 13-15.  Sean Elliott, then the

23  Executive Director of NAFI, participated in drafting the Program and provided

24  _____

[4]  The court in Aalmuhammed set forth three factors to determine whether a
25  contributor is an "author" for the purpose of joint authorship, in the absence of a
contract: (1) whether the putative author controls the work and is "the inventive or
26  master mind who creates, or gives effect to the idea"; (2) whether the "putative
coauthors make objective manifestations of a shared intent to be coauthors"; and (3)
27  whether "the audience appeal of the work turns on both contributions and the share
of each in its success cannot be appraised."  Aalmuhammed v. Lee, 202 F.3d 1227,
1231-1234 (9th Cir.2000).

28

1    input into the Program and provided the input of others.  The Program was

2    reviewed and edited by NAFI personnel and displayed on the NAFI website.  Id. at

3    ¶¶ 4, 6-13 and 16-17.[5]

4                    4.    Stowell does not have a valid copyright registration or
                           application.
5

6         Despite references to the contrary in the First Amended Complaint, Stowell

7    has not yet applied for a copyright registration and the copyright registration

8    obtained by the Hills does not reference Stowell.  Under 17 U.S.C. § 411(a) of the

9    Copyright Act "no action for infringement of the copyright in any United States

10   work shall be instituted until registration of the copyright claim has been made in

11   accordance with this title."[6]  Some courts, including courts in the Central District of

12   California, have construed Section 411(a) to mean that a registration certificate

13   must have actually been *issued* to plaintiff before suit.  Loree Rodkin Management

14   Corp. v. Ross-Simons Inc., 315 F.Supp.2d 1053 (C.D. Cal. 2004) (concluding that a

15   federal district court lacks subject matter jurisdiction over a copyright claim if the

16   certificate of registration is yet to be issued); see also, Ryan v. CARL 1998 WL

17   320817 (N.D. Cal. June 15, 1998); Brush Creek Media v. Boujaklian, 2002 WL

18   1906620 (N.D. Cal. Aug. 19, 2002); Goebel v. Manis, 39 F.Supp.2d 1318 (D. Kan.

19   1999); Demetriades v. Kaufmann, 680 F. Supp. 658, 661 (S.D.N.Y. 1988).

20        Since Stowell does not have a copyright registration, and as of the date of

21   filing this Opposition, has not applied for a registration, the Court does not have

22   subject matter jurisdiction over him in this action.  The motion for preliminary

23

24   _____

25   [5]  Plaintiffs' argument that NAFI has a "revocable, royalty-free, non-exclusive,
     license" to use its own Program is misguided.  Motion, p. 4-5.  They contend that
26   because there is no oral or written license from Plaintiffs allowing NAFI to use the
     NAFI Master Instructor Program, that a license can be implied.  The main flaw in
27   this argument is that NAFI owns the Program so it would not need a license from
     the Hills to use its own Program.  The lack of oral or written license only supports
     NAFI's argument that the Program was created by and for NAFI.
28   [6]  Statutory exceptions to this rule exist for visual artists and foreigners.

1  injunction cannot be granted for any portion of the NAFI Master Instructor Program

2  Stowell alleges to own.[7]

3

4          5.     <u>Plaintiffs' claims are barred by the doctrine of laches.</u>

5        Any infringement claim by Plaintiffs is barred by the doctrine of laches.

6  Laches bars a claim for copyright infringement where a plaintiff who, "with full

7  knowledge of the facts, acquiesces in a transaction and sleeps upon his rights."

8  <u>Danjaq LLC v. Sony Corporation</u>, 263 F.3d 942, 955 (9th Cir. 2001).  To

9  demonstrate laches, the defendant must prove both "an unreasonable delay by the

10  plaintiff and prejudice to itself."  <u>Couveau v. American Airlines, Inc.</u>, 218 F.3d

11  1078, 1083 (9th Cir. 2000).  "In evaluating the delay element of the laches test, the

12  focus is on the reasonableness of the delay rather than on the number of years that

13  have elapsed" and "the extent of prejudice demanded to be shown varies inversely

14  with the reasonableness and excuse for delay."  <u>Armstrong v. Virgin Records, Ltd.</u>,

15  91 F. Supp. 2d 628, 644 (S.D.N.Y. 2000).

16        As discussed more fully above, the Hills delayed more than 12 years before

17  filing an action for copyright infringement and Stowell delayed more than nine

18  years.  Such delay is unreasonable.  There are two forms of prejudice in the laches

19  context:  (1) evidentiary and (2) expectations-based.  "Evidentiary prejudice

20  includes such things as lost, stale, or degraded evidence, or witnesses whose

21  memories have faded or who have died."  <u>Danjaq LLC</u>, 263 F.3d at 955.  "A

22  defendant may also demonstrate prejudice by showing that it took actions or

23  suffered consequences that it would not have, had the plaintiff brought suit

24  promptly."  <u>Id</u>. (citing cases).

25        Evidentiary prejudice exists here.  NAFI does not maintain complete

26  documents and records dating back to 1995, when the Hills first claim to have

27  [7] Certainly any claim of irreparable harm by Stowell should be summarily
disregarded since he has not had the urgency to bother to apply for a copyright
28  registration, despite notifying NAFI of his purported rights in February of 2009.

started working on the Program.  Blair Decl., ¶ 9.  NAFI employees have left and others have memories that have faded.  Expectation prejudice also exists.  NAFI at all times acted under the belief that the NAFI Master Instructor Program was its own.  NAFI spent money over the last 12 years marketing and advertising the Program and has spent money administering the Program.

C.    The Balance of Equities Tips in NAFI's Favor.

A plaintiff seeking a preliminary injunction must also establish that the balance of equities tips in his favor.  Winter, 129 S.Ct. at 374 (citations omitted); see also Continental Airlines v. Intra Brokers, Inc., 24 F.3d 1099, 1104 (9th Cir.1994) (stating that courts should balance hardships between plaintiffs and defendants in considering injunctions).  In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief ."  Winter, 129 S.Ct. at 376-77 (2008) (citations omitted).  NAFI has seen a decline in NAFI Master Instruction applications and renewals, and it is NAFI that will suffer the greater hardship if an injunction is issued.  NAFI is the party in this case that has been using the materials at issue for over 12 years, has invested in the advertising, marketing and administering of the Program and has always had its name associated with the Master Instructor Program.  If NAFI is enjoined from using its own Program, it will adversely affect NAFI's reputation and goodwill.

D.    The Public Has No Interest In The Outcome.

Other than flight instructors, it would appear that the public has no interest in the outcome of this action.  Since both NAFI and the Hills currently offer programs that are accredited by the FAA, flight instructors are free to choose either program or any other accreditation program available.  The public is not harmed by the continued existence of the well-established NAFI Master Instructor Program.

E.    Request For Expedited Discovery

Rule 26(d) of the Federal Rules of Civil Procedure provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized by these rules, by stipulation, or by court order." Fed.R.Civ.P. 26(d).  Courts apply a "good cause" standard in considering motions to expedite discovery.  Semitool, Inc. v. Tokyo Electron Am., 208 F.R.D. 273, 276 (N.D.Cal.2002). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Id.

NAFI should not be denied the opportunity to conduct discovery before the court considers enjoining NAFI from offering its NAFI Master Instructor Program, which it has owned and offered for twelve years.

IV.    **CONCLUSION**

Based on the foregoing, Plaintiffs cannot meet the burden required for the extraordinary relief sought and their motion should be denied.

DATED:  November 9, 2009                **PERKINS COIE LLP**

By: /s/ Katherine M/ Dugdale
    Katherine M. Dugdale

Attorneys for Defendant
NATIONAL ASSOCIATION OF
FLIGHT INSTRUCTORS, INC